UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAS HEZEKIAH TAFARI,<br><br>Plaintiff,<br><br>v.<br><br>UNITED POSTAL SERVICE POSTMASTER GENERAL MEGAN J. BRENNAN,<br><br>Defendant. | No. 2:17-cv-0113-MCE-EFB PS<br><br>FINDINGS AND RECOMMENDATIONS |

This action proceeds on plaintiff Ras Hezekiah Tafari's disability discrimination claim under Section 501 of the Rehabilitation Act against defendant Megan J. Brennan, the United States Postmaster General.[1] The parties have filed cross-motions for summary judgment. ECF Nos. 81 & 84. For the reasons discussed below, it is recommended plaintiff's motion be denied and defendant's motion be granted.[2]

/////

/////

---

[1] This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to 28 U.S.C. § 636(b)(1) and Eastern District of California Local Rule 302(c)(21).

[2] The court determined that oral argument would not materially assist in resolution of the motions, and they were submitted without argument pursuant to Eastern District of California Local Rule 230(g). ECF No. 99.

1

I.      Plaintiff's Objections to Defendant's Evidence

Plaintiff raises multiple evidentiary objections in opposition to defendant's motion for summary judgment.

First, plaintiff requests that the court exclude an investigation report completed by the Postal Service Office of the Inspector General ("OIG"), which defendant submitted as an exhibit to the declaration of defendant's counsel, Chi Soo Kim. ECF No. 89 at 9-18.[3] Plaintiff argues that the report should not be considered because it contains inadmissible hearsay. *Id.* at 12-18. Here, the parties have filed cross-motions and the defendant is both a moving and non-moving party. On summary judgment, the non-moving party's evidence need not be in a form that is admissible at trial. *See Burch v. Regents of University of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Instead, the focus is on whether contents of the evidence could be presented in admissible form at trial. *See Wormuth v. Lammersville Union Sch. Dist.*, 305 F. Supp. 3d 1108, 114 (E.D. Cal. 2018) ("[T]he evidentiary admission standard at summary judgment is lenient: A court may evaluate evidence in an inadmissible form if the evidentiary objection could be cured at trial."). Thus, on summary judgment, "objections to the form in which the evidence is presented are particularly misguided . . . ." *Burch*, 433 F. Supp. 2d at 1119. Because the OIG report could be admitted at trial in a variety of ways, plaintiff's hearsay objections lack merit.[4] *See Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003) (holding that a diary could be considered at the summary judgment stage because the contents of the diary "could be admitted into evidence at trial in a variety of ways.").

---

[3] Many of plaintiff's exhibits were not submitted in an orderly fashion. For instance, plaintiff filed a supplemental declaration in support of his motion for summary judgment (ECF No. 91), which was followed by a separate filing containing additional exhibits intended to support his motion (ECF No. 92). Because of the potential for confusion, all citations to court documents are to the pagination assigned via the court's electronic filing system.

[4] Plaintiff also argues that OIG report should not be considered because Chi Soo Kim lacks personal knowledge necessary to authenticate the report. ECF No. 89 at 9-18. In response, defendant resubmitted the OIG as an exhibit to the declaration of David Strerrett, who is the manager of the Health and Resource Management for the Sacramento District of the United States Postal Service and is the custodian of records, including the OIG report. ECF No. 95-2. Defendant also submitted the OIG report as an exhibit to the declaration of Special Agent Gary Cummings, the author of the report, presumably out of an abundance of caution. ECF No. 95-1.

Plaintiff also objects to the declarations of Salvatore Cardinal ("Cardinal") and Christopher Riddle ("Riddle"), which were submitted by defendant in support of its opposition to plaintiff's motion for summary judgment. ECF No. 97-1. Plaintiff argues that these declarations and their exhibits should be excluded because defendant failed to identify Cardinal and Riddle as potential witnesses in her initial disclosures. *Id.* at 3-6.

Any failure to disclose these individuals was, at most, harmless. *See R & R Sails, Inc. v. Insurance Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012) ("The party facing sanctions bears the burden of proving that its failure to disclose required information was substantially justified or is harmless."). Each declaration is submitted solely for the purpose of authenticating a document. Cardinal's declaration serves to authenticate the U.S Postal Service's Job Description for a city carrier, the position held by plaintiff during his employment with the United States Postal Service ("USPS"). ECF No. 88-1. Riddle's declaration authenticates a copy of the modified limited duty assignment the Postal Service offered plaintiff in August 2013. ECF No. 88-2. Plaintiff was aware of both documents well before the defendant moved for summary judgment. Plaintiff reviewed the city carrier job description at his deposition (ECF No. 84-4 at 36-37), and he personally signed the offer of modified limited duty assignment (ECF No. 82-2 at 4). Furthermore, plaintiff also submitted a copy of the same modified duty assignment in support of his opposition to defendant's motion for summary judgment. ECF No. 89-1 at 32. Accordingly, plaintiff cannot claim to have been prejudiced by any failure by defendant to identify Cardinal and Riddle in her initial disclosures.

For these reasons plaintiff's objections are overruled.

II.  Motions for Summary Judgment

    A.  Undisputed Facts

In 2006, plaintiff was hired as a city carrier for the USPS. ECF No. 92 at 9.[5] In 2010, he suffered an on-the-job injury and was diagnosed with DeQuervain's tenosynovitis of the left

---

[5] During the time he was employed by the USPS, plaintiff Ras Hezekiah Tafari was known as Diondre Garrison. According, the exhibits in this case often refer to plaintiff by his former name.

wrist. ECF No. 81 at 51. Plaintiff filed a worker's compensation claim, which was accepted by the Office of Workers' Comp Programs ("OWCP"), and eventually resumed work on a modified duty basis. ECF No. 81 at 51; ECF No. 84-4 at 10.[6] From mid-January 2013 to July 25, 2013, plaintiff's status was temporary total disability due to worsening of his tenosynovitis symptoms. ECF No. 89-1 at 8; *see* ECF No. 81 at 4.

At the beginning of August 2013, plaintiff accepted a modified duty assignment and returned to work. *Id.* at 27-28. Then on August 6, 2013, plaintiff suffered another workplace injury, this time to his back. ECF No. 89-1 at 27; ECF No. 90-1 at 25. Plaintiff's injury was initially evaluated by Dr. Kevin Buckman, who limited plaintiff to lifting no more than five pounds; kneeling, twisting, bending, and pulling no more than one hour a day; walking no more than two hours a day, and working no more than six hours a day. ECF No. 90-1 at 26. Dr. Buckman saw plaintiff again on August 13, 2013. After examining plaintiff, Dr. Buckman completed a Duty Status Report stating that plaintiff could resume working eight hours a day but was restricted from lifting no more than five pounds; sitting, kneeling, twisting, bending, and pulling for more than an hour a day; and driving a vehicle. *Id.* at 28.

On the same date, plaintiff requested the OWCP to authorize for Dr. Gary Wisner—the physician treating plaintiff's tenosynovitis—to also provide treatment for his back injury. ECF No. 81 at 4, 47. Also on August 13, 2013, Dr. Buckman called Joan Andama, a Health and Resource Management Specialist with the USPS, and expressed his opinion that plaintiff did not want to return to work. ECF No. 97-1 at 8. Ms. Andama promptly submitted a fraud referral to the USPS's Office of Inspector General, which commenced an investigation into plaintiff's reported back injury. ECF No. 81 at 46-47; ECF No. 95-2 at 4-122.

More than a week later, plaintiff began seeing Dr. Wisner for treatment of his back injury. ECF No. 89-1 at 6. Dr. Wisner completed a work status report restricting plaintiff from engaging in any lifting, kneeling, bending, pushing, and driving. ECF No. 89-1 at 11. Based on those

---

[6] Although neither party submits evidence regarding plaintiff's modified duty assignment(s), both agree he was initially placed on some sort of modified duty after injuring his wrist. *See* ECF No. 81 at 4; ECF No. 84-1 at 2.

4

restrictions, plaintiff subsequently accepted another modified duty assignment, which limited him to working at a will call window for one hour a day. *Id*. at 32; ECF No. 92 at 10.

In early December 2013, plaintiff was placed on emergency off-duty status without pay after the OIG's investigation concluded he had misrepresented his medical limitations. ECF No. 89-1 at 21. On February 19, 2014, plaintiff's supervisor issued a Notice of Removal, informing plaintiff that his employment was being terminated effective April 1, 2014, for misrepresenting his medical restrictions and for driving a USPS vehicle on a suspended license. ECF No. 92 at 9-27.

Plaintiff's sole remaining claim alleges that his employment was unlawfully terminated because of his disability in violation of the Rehabilitation Act of 1973.[7] ECF No. 1. Both parties now move for summary judgment on that claim. ECF Nos. 81 & 84.

B. <u>Summary Judgment Standard</u>

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford–El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471–72 (9th Cir.1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex*, 477 U.S. at 323–24. Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)

---

[7] Plaintiff's complaint also alleged claims under the Americans with Disabilities Act, Privacy Act, and for intentional and negligent infliction of emotion distress. ECF No. 1. Those claims were previously dismissed without leave to amend. ECF Nos. 16 & 29.

advisory committee's note on 1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.2001) (en banc).  If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures.  Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own.  When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323–24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment … is satisfied."  *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is

1 determined by the substantive law applicable for the claim in question. *Id.* If the opposing party
2 is unable to produce evidence sufficient to establish a required element of its claim that party fails
3 in opposing summary judgment. "[A] complete failure of proof concerning an essential element
4 of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S.
5 at 322.

6 Second, the dispute must be genuine. In determining whether a factual dispute is genuine
7 the court must again focus on which party bears the burden of proof on the factual issue in
8 question. Where the party opposing summary judgment would bear the burden of proof at trial on
9 the factual issue in dispute, that party must produce evidence sufficient to support its factual
10 claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.
11 *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit
12 or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue
13 for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to
14 demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such
15 that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*,
16 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

17 The court does not determine witness credibility. It believes the opposing party's evidence
18 and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475
19 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce
20 evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v.*
21 *American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*,
22 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment
23 is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other
24 hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the
25 nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation
26 omitted); *Celotex.*, 477 U.S. at 323 (if the evidence presented and any reasonable inferences that
27 might be drawn from it could not support a judgment in favor of the opposing party, there is no
28 /////

genuine issue). Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

   C.   Discussion

The Rehabilitation Act prohibits discrimination based on disability and expressly incorporates the standards set out in the Americans with Disabilities Act relating to employment discrimination. 29 U.S.C. § 791 (incorporating 42 U.S.C. §§ 12111 *et seq.*); *see Lopez v. Johnson*, 333 F.3d 959, 961 (9th Cir. 2003) ("Section 501 borrows its substantive standard from the Americans with Disabilities Act.").

In evaluating claims under the Rehabilitation Act, courts in this circuit generally apply the *McDonnell Douglas* three-part burden shifting test. *See Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1175 (9th Cir. 1998). Under this test, a plaintiff is required to first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its decision. Once the employer does so, the plaintiff then bears the burden of proving that the proffered reason is a pretext for discrimination. *Curley v. City of North Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

   1.   Prima Facie Case

In applying the burden-shifting analysis, the starting point is whether plaintiff has produced sufficient evidence to establish a prima facie case of disability discrimination. To establish a prima facie case of disability discrimination "under the Rehabilitation Act, plaintiff must demonstrate that (1) [he] is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of [his] disability." *Walton v. U.S. Marshals Service*, 492 F.3d 998, 1005 (9th Cir. 2007). The burden of establishing a prima facie case is minimal and requires the production of little evidence. *Snead v. Metro. Property & Cas. Ins. Co.*, 237 F.3d 1080, 1091-92 (9th Cir. 2001); *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (plaintiff "need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because the ultimate question is one that can only be

/////

resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record.") (internal citations omitted).

Here, defendant does not dispute that plaintiff has a disability within the meaning of the Rehabilitation Act.[8] ECF No. 84-1 at 4. Instead, defendant argues that plaintiff fails to establish the second and third elements of a prima facie disability discrimination claim. Specifically, defendant argues that plaintiff was not qualified for employment because he could not perform the essential functions of a city mail carrier. *Id*. at 4-5.

To be a "qualified individual" under the Rehabilitation Act, plaintiff must be an individual "who, with or without reasonable accommodation, can perform the essential function of the position." *Mustafa v. Clark Cnty School Dist.*, 157 F.3d 1169, 1175 (9th Cir. 1998). Essential functions are defined as "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1).

The job description for the city mail carrier position includes the following duties and responsibilities:

(1) "Routes and cases[9] all classes of mail in sequence of delivery along an established route."

(2) "Prepares and separates all classes of mail to be carried by truck to relay boxes along route for subsequent delivery."

(3) "Delivers mail along a prescribed route, on foot or by vehicle, on a regular schedule, picking up additional mail from relay boxes as needed."

ECF No. 84-4 at 36. At his deposition, plaintiff agreed that his primary duties were to case and deliver mail. *Id*. at 12-13. He also conceded that he was not able to perform these duties at the time his employment was terminated. *Id*. at 13. He argues now, however, that he was not able to perform these essential functions due to his placement on off-duty status. That placement

---

[8] Plaintiff is diagnosed with "left wrist osteoarthritis and DeQuervain's tenosynovitis." ECF No. 81 at 51.

[9] At his deposition, plaintiff described casing as organizing mail in a manner that promotes efficient delivery on a route. ECF No. 83-1 at 56-57.

9

occurred more than two months before the Notice of Removal issued and was initiated in response to the conclusion from the OIG's investigation that plaintiff had misrepresented his medical limitations. ECF No. 89 at 21. Thus, plaintiff appears to argue on the instant motions that he remained physically capable of performing the essential functions of his employment despite his medical restrictions. But that contention is plainly contradicted by plaintiff's deposition testimony.

After plaintiff testified that he was unable to perform his position's essential functions, defendant's counsel asked him multiple questions seeking to ascertain whether plaintiff was able to perform these duties with a modified assignment. ECF No. 83-1 at 60-62. Plaintiff testified that with a modified duty assignment, he could case mail with his right hand but "was not able to deliver [mail] based off the - - off of the work restrictions." *Id.* at 61. Plaintiff clearly conceded that his medical restrictions precluded him from delivering mail, which is an essential function of his position.

Furthermore, work status reports from the months preceding plaintiff's placement on off-duty status also indicate plaintiff was not able to perform the essential function of a city mail carrier.[10] These reports reflect that plaintiff could not lift any amount of weight, perform any grasping, nor drive a vehicle. ECF No. 89-1 at 12-18. Thus, at the time he was placed on off-duty status, plaintiff continued to have medical restrictions that interfered with his ability to case mail and precluded him from delivering mail along his route.

Plaintiff also argues that he was a "qualified individual" because he had accepted modified limited duty assignments, which he was able to perform despite his medical restrictions. ECF No. 81 at 11; ECF No. 89 at 21. But these limited-duty assignments did not involve performing the essential functions of the city mail carrier position. For example, several of the modified work assignments only permitted plaintiff to case mail with his right hand for no more than two hours a day. ECF No. 81 at 53-56. But plaintiff was not able to deliver mail along his route. More significantly, plaintiff's last modified work assignment, which he accepted on

---

[10] The record does not contain any work status reports dated after plaintiff's placement on off-work status.

August 29, 2013, only permitted him to work up to one hour a day at a will call window. ECF No. 88-2 at 4. The ability to work at a will call window for up to one hour a day does not demonstrate that plaintiff could perform the essential function of a city mail carrier, which included casing and delivering mail along a specific route.[11] *See Puletasi v. Wills*, 290 F. App'x 14, 18 (9th Cir. 2008) (holding that evidence of plaintiff's ability to perform his temporary light duty position did not refute evidence he was unable to perform other essential functions of his position).

Because plaintiff cannot establish that he was a "qualified individual" under the Rehabilitation Act, he fails to meet his burden of establishing a prima facie case.

### 2. Legitimate, Non-Discriminatory Reason

Even assuming a prima facie case, defendant has submitted evidence establishing that it had a legitimate, non-discriminatory reasons for terminating plaintiff's employment. ECF No. 84-1 at 6-7. Specifically, defendant's evidence reflects that plaintiff's employment was terminated because he misrepresented his medical restrictions and drove a Postal Service vehicle on a suspended license. *Id.*

When a plaintiff establishes a prima facie case, the burden of producing evidence that a legitimate, non-discriminatory reasons existed for the adverse employment action shifts to the defendant, but the burden of persuasion remains with the plaintiff. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (citing *McDonnell Douglas*, 411 U.S., at 804–805). Defendant's evidence demonstrates that plaintiff misrepresented his restrictions. After plaintiff submitted duty status reports detailing significant physical limitations due to his back injury, defendant initiated a four-month investigation that discovered plaintiff was able to perform activities that exceeded his medical restrictions. ECF No. 84-1 at 6. For example, plaintiff submitted work restrictions from Dr. Wisner in August 2013 stating plaintiff could not engage in

---

[11] Plaintiff's evidence includes a duty status report dated November 20, 2014. ECF No. 89-1 at 18. At that time, plaintiff was able to continuously stand, walk, bend, and perform fine manipulation, but he still was precluded from driving. *Id*. That same form also indicates that plaintiff's employment required that he be able to drive up to eight hours a day. *Id*. Although plaintiff's evidence indicates improvement in his ability to function generally, it does not demonstrate he was able to perform the essential functions of his position.

any of the following: "sit, stand, walk, climb, kneel, bend or stoop, twist, pull or push, grasp, reach above his shoulder, or drive." *Id.* While these restrictions were in place, plaintiff was observed driving for more than one hour to and from work, grasping items with his left hand, and bending into the back seat of his car. ECF No. 95-1 at 9-11. Plaintiff also submitted multiple work status reports in September, October, and November of 2013, each stating that plaintiff was unable to drive a vehicle or perform any grasping. ECF No. 89-1 at 13-18. But during that time, plaintiff was repeatedly observed driving his personal vehicle—often for more than an hour at one time—and grasping items with his left wrist. ECF No. 95-1 at 11-16. From this evidence, the USPS reasonably concluded that plaintiff had misrepresented his medical restrictions.

The USPS also terminated plaintiff's employment for driving a government vehicle while his driver's license was suspended. As part of the OIG's investigation, the investigating officer requested a DMV license printout for plaintiff's driver's license number. ECF No. 95-1 at 39. A printout provided by the DMV reflected that plaintiff's license had been suspended on October 24, 2012, and remained suspended at least through December 3, 2013, the date the printout was provided. *Id.* Plaintiff, however, was on full-duty status from late October 2012 to early January 2013, during which time he drove a USPS government vehicle to deliver mail along his route. *Id.* Not only was driving on a suspended license unlawful, it also violated USPS policy requiring employees to have a current and valid state driver's license to maintain driving privileges. ECF No. 83-2 at 20-26.

Accordingly, defendant has established a legitimate, nondiscriminatory basis for terminating plaintiff's probationary employment.

### 3. Pretext

Once an employer provides a legitimate, non-discriminatory reason for its decision, the plaintiff then bears the burden of proving that the stated reason is a pretext for disability discrimination. A plaintiff can establish pretext by "directly persuading the court that a discriminatory reason more likely motivated the employer[,] or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Stegall v. Citadel Board. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003) (quoting *Burdine*, 450 U.S. at 256 (citation omitted)). "'Direct

evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption.'" *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) (quoting *Davis v. Chevron, U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994)). "When plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Id.* In contrast, when direct evidence is unavailable, and the plaintiff proffers only circumstantial evidence that the employer's motives were different from its stated motives, plaintiff must show "specific" and "substantial" evidence of pretext to survive summary judgment. *Id.* at 1222.

Plaintiff advances several arguments for why defendant's proffered reasons should be rejected as pretextual. First, plaintiff argues that there was no inconsistency between the medical restrictions provided by Dr. Wisner and the activities observed by the OIG investigator. Specifically, he argues that the work status reports completed by Dr. Wisner do not state "that the restriction of 'no driving a vehicle' means that Plaintiff cannot drive his personal car while in his private capacity." ECF No. 89 at 7-8. Plaintiff also submits a letter from Dr. Wisner, which states in its entirety: "Restrictions provided applies [sic] to work only. From 7-1-10 – current." ECF No. 81 at 38.

Dr. Wisner's letter is dated February 26, 2014, after the decision to terminate plaintiff's employment was already made. ECF No. 81 at 38. Accordingly, the letter could not have notified defendant that plaintiff had different restrictions at work than at home. But more significantly, it is completely illogical to conclude that plaintiff is somehow more physically restricted when he is clocked in at work than when he is not.

Plaintiff also argues that driving a government vehicle on a suspended license was not a valid reason for terminating his employment because he was not aware that his license had been suspended. ECF No. 89 at 22. Plaintiff claims that he did not know his licensed was suspended until December 2013, when he learned of the OIG's investigation. *Id.* Plaintiff's lack of knowledge does not change the fact that he was illegally driving a government vehicle in violation of the USPS's policy. Nor does it demonstrate that defendant terminated plaintiff's employment due to his disability. To the contrary, the argument concedes the underlying factual

13

basis for the motivation to terminate; i.e. his employer learned that he was driving a government vehicle while his driver's license was suspended.

Lastly, plaintiff argues that the proffered reasons are pretextual because the discipline imposed (i.e., terminating his employment) was excessive under the circumstances. ECF No. 97 at 8; ECF No. 81 at 12. He contends that since he had not previously been disciplined in relation to his medical restrictions or driving without a valid license, his discipline should have been "corrective" in nature—such as issuing a letter of warning or a short suspension—rather than "punitive." ECF No. 81 at 12-13. While plaintiff may legitimately believe that less severe disciplinary action was warranted, he has not submitted evidence to show that the action taken was discriminatory. Critically, he has not submitted evidence that other individuals who drove a government vehicle on a suspended license were permitted to keep their jobs. Nor has he submitted evidence suggesting that other individuals who misrepresented their medical restrictions received less severe discipline.

Accordingly, defendant is entitled to summary judgment on plaintiff's Rehabilitation Act claim, and plaintiff's motion for summary judgment must be denied.

Accordingly, it is hereby RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 81) be denied;

2. Defendant's motion for summary judgment (ECF No. 84) be granted;

3. Judgment be entered against plaintiff and in favor of defendant; and

4. The Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

/////

/////

/////

14

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 11, 2020.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE